Bradford D. Conover, Esq.
Conover Law Offices
Attorneys for Plaintiff
75 Rockefeller Plaza, (20th Floor)
New York, New York 10019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

PETER BURKHART,

           Plaintiff,

-against-                                                    Index No. 08-CV-7403 (LTS)(HP)
                                                              ECF CASE

THE NEW YORK CITY DEPARTMENT
OF EDUCATION, JOEL KLEIN, CHANCELLOR,
in his official and individual capacities, and
LAWRENCE BECKER, in his official and individual
capacities,

           Defendants.

-----------------------------------------------------------------------x

## COMPLAINT

      Plaintiff, Peter Burkhart, by his attorneys, Conover Law Offices, for his complaint against defendants, The New York City Department of Education, Joel Klein, Chancellor, in his official and individual capacities, and Lawrence Becker, in his official and individual capacities, respectfully alleges as follows:

### NATURE OF ACTION

      1.    This is an action for damages against defendant for disability discrimination and retaliation in violation of the Titles I and II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12111 *et seq*., ("ADA"); Title V, § 503 of the Act, 42 U.S.C. § 12203; the Executive

Law of the State of New York ("Executive Law"), Article 15, §296 (2)(a); the Human Rights Law of the City of New York of 1991, Administrative Code § 8-502 *et seq*. ("HRL"); the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq*. ("Rehabilitation Act"); the Fourteenth Amendment to the Untied States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("1983"); and for intentional infliction of emotional distress.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §1331 and 42 U.S.C. §12101 *et seq*., and the Court's pendent jurisdiction is invoked for the claims arising under state statutory and common law.

3. Venue in this Court is proper in that defendant maintains principal offices in the District and plaintiff's claims arose in the District.

## ADMINISTRATIVE PROCEEDINGS

4. On or about February 14, 2006, plaintiff duly filed an Notice of Claim against defendants.

5. On or about September 13, 2006, more than 180 days ago, plaintiff, Peter Burkhart, filed a timely complaint alleging disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), bearing Charge No. 520-2006-03745 (the "EEOC Charge").

6. On or about June 3, 2008, less than 90 days ago, the EEOC issued a right to sue letter on the EEOC Charge. A copy of which is attached hereto as Exhibit A.

## PARTIES

7. Plaintiff, Peter Burkhart ("Burkhart"), is a citizen of the United States, residing in the City, County and State of New York.

8. At all times relevant, defendant, The New York City Department of Education, ("DOE"), is and was a mayoral agency, department or other administrative subdivision of the defendant NYC with principal offices at 52 Chambers St. NY, NY 10007.

9. At all times relevant, defendant, Joel Klein, is and was a citizen of the United States, residing in the City, County and State of New York and is and was Chancellor of the DOE.

10. At all times relevant, defendant, Lawrence Becker, is and was a citizen of the United States, residing in the City, County and State of New York and is and was Senior Deputy Director, Division of Human Resources, of the DOE.

## FACTS

11. In or about May, 1998, Burkhart was employed as a per diem substitute teacher with the DOE at Public School 151 in Queens ("P.S. 151").

12. Burkhart was qualified for the job in that he had a Bachelor of Arts and a Masters in Science from the State University of New York.

13. In or about March 2000, Burkhart was assigned a Preparatory Provisional teaching position ("PPT") in the Second Grade at P.S. 151.

14. During the 2000-2001 school year, Burkhart was assigned as a "Push In" teacher for the Second Grade and, in the Spring of 2001, later as a full-time PPT teacher for the Fifth Grade at P.S. 151.

15. On or about September 1, 2002, Burkhart received his Public School Teacher Certificate, Provisional.

16. During the 2001-2002 school year, Burkhart was assigned a full-time PPT "Inclusion" position teaching the Second Grade, which class included both regular and Special Education students at P.S. 151.

17. On or about June 2002, Burkhart was "Excessed" from P.S. 151 and was reassigned to Intermediate School 10 ("I.S. 10").

18. On or about February 1, 2003, Burkhart received a New York City Department of Education License as a Teacher of English of Junior High School and High School.

19. From June, 2002 through June, 2005, Burkhart, as a Certified Provisional Teacher ("CPT"), was employed full-time by the DOE at I.S. 10 teaching 6th and 7th Grade English.

20. At all times while employed by the DOE from 1998 through 2005, Burkhart received annual job performance evaluations consistently rating his job performance as "Satisfactory," the highest rating given to teachers employed by the DOE.

21. In accordance with the general personnel policy of the DOE, Burkhart's class room teaching performance was observed by his supervisors at least twice a year with consistently satisfactory results.

22. Burkhart, during the 1998-1999 school year, first experienced seizures and was diagnosed with epilepsy.

23. Burkhart's medical condition caused him to experience infrequent epileptic seizures of very short duration, typically one seizure lasting under one minute every couple of months during which various dis-inhibition gestures, utterances and behaviors were exhibited

about which Burkhart had no memory.

24. At all relevant times, Burkhart was under the care of a doctor for his epileptic condition and was prescribed medications, which were adjusted to control the effects and limit the frequency of the seizures.

25. While teaching, Burkhart experienced occasional epileptic seizures at school, and, at all times relevant, students, teachers, the principal, and union representative were aware of his epileptic condition and occasional seizures.

26. On or about December 21, 2004, the principal of I.S. 10 requested medical documentation concerning Burkhart's epileptic condition, and Burkhart provided the principal with a letter from his doctor, Dr. Ann Hunt, confirming that he was under her care for epileptic seizures.

27. During the period January 2005 through June 2005, certain students made statements ridiculing and discriminating against Burkhart on account of his medical condition, such as referring to Burkhart as a "pervert" and stating that Burkhart should be "locked up."

28. On or about March 2005, Burkhart complained about the student statements to the principal of I.S. 10, who convened a meeting with his class attended by the assistant principal and guidance counselor for the purpose of educating the class about epilepsy and Burkhart's medical condition.

29. Beginning on or about March 2005, Burkhart formally applied to transfer to a teaching position in a high school where he believed that his medical condition would be better understood by an older more mature student population and identified three high schools in order of his preference, Aviation High School, Washington Irving High School, and International High

School.

30. During the course of his attempts to transfer, Burkhart advised the principal and his representative from the United Federation of Teachers ("UFT") about the reasons for his transfer request, including the discriminatory treatment and student ridicule on account of his medical condition.

31. On or about April 2005, after Burkhart experienced a seizure during a class, he was advised that a student's grandparent had complained that Burkhart had exhibited inappropriate behavior during the seizure.

32. As a result of the grandparent's complaint, the principal of I.S. 10 and the local instructional superintendent of Region 4, requested that Burkhart be examined by the DOE's Medical Bureau ("Medical Bureau").

33. On or about May 17, 2005, Burkhart provided the principal with further medical documentation of his epileptic condition describing his medication adjustments, infrequent seizures, and resulting dis-inhibition behavior.

34. On May 19, 2005, Burkhart was examined by Dr. Audrey Jacobson, the doctor for the Medical Bureau.

35. On or about May 19, 2005, Dr. Audrey Jacobson determined that Burkhart was "fit at present" for duty, but invited the DOE to refer Burkhart back to the Medical Bureau, stating: "if future need arises, please refer back for reevaluation."

36. On or about June 2005, Burkhart was advised that his formal transfers application to a high school position submitted in March 2005 had been denied.

37. On or about June 2005, like the previous years, Burkhart once again, received a

satisfactory performance rating for the 2004-2005 school year.

38. On or about June 16, 2005, Burkhart received a letter from the DOE's Office of Special Investigations ("OSI") advising him that OSI was investigating "allegations that had been lodged against" him arising from an epileptic seizure.

39. On or about June 29, 2005, after the end of the school year, Burkhart was advised by letter that he had been "placed in excess in [his] license area effective September 2005."

40. Although the DOE allowed a formal transfer application to be submitted only once a year, Burkhart, in view of his medical condition and with the knowledge and support of the principal of I.S. 10 and his UFT representative, continued, between June 30, 2005 and September 6, 2005, to seek a transfer to a high school teaching position, including Newcomers High School, Bryant High School, Forest Hills High School, Flushing High School, Martin Luther King Jr., High School and John F. Kennedy High School.

41. On or about September 5, 2005, Burkhart was advised by the principal of I.S. 10 that if he wished to transfer to a high school teaching position he needed to first be released from his teaching position at I.S. 10.

42. On or about September 6, 2005, for the purpose of pursuing a transfer and reassignment to a high school teaching position, Burkhart, as instructed, advised the principal that he wished to be released from his 6th and 7th Grade English class at I.S. 10.

43. In or about September 6 2005, Burkhart was released from his teaching position as I.S. 10 and constructively discharged.

44. On or about late September or early October, 2005, Burkhart was required to attend a meeting with OSI investigators concerning the student's grandparent's allegations

against him, at which time he explained that his conduct was caused by his medical condition, and that, as a result, he had obtained a release from his position at I.S. 10 and was seeking a transfer to a high school position.

45. On or about November 14, 2005, Burkhart received a letter from Becker, advising him, without explanation, that at the request of OSI, he had been placed on the DOE's "Ineligible/Inquiry List," which, upon information and belief, bars his re-employment for any job within the DOE and effectively blacklists him from other teaching positions in New York State and beyond.

46. On or about May 25, 2006, Burkhart attended a DOE hearing with his UFT representative appealing his placement on the Ineligible List, during which hearing he was informed that the "Ineligible List" only included teachers with unsatisfactory job performance ratings and/or who had willfully committed serious misconduct, neither of which applied to Burkhart, and that OSI, contrary to the November 14, 2005 letter from Becker, had not recommended, and did not know the reason for, his placement on the Ineligible List.

47. Despite repeated requests, the DOE, more than two years after the appeal was filed, has failed to issue a decision on Burkhart's appeal of his placement on the Ineligible List.

48. Burkhart's placement on the Ineligible List was an adverse action that has effectively barred him from any comparable employment and from pursuing the profession for which he is educated, trained, and experienced.

49. At all times relevant Burkhart suffered from a physical or mental impairment that substantially limits one or more of his major life activities, and/or he was regarded by defendants as having such an impairment.

50. The defendants' engaged in a pattern and practice of discrimination and retaliation in failing to engage in a dialogue concerning plaintiff's request for an accommodation; in failing to reassign or transfer plaintiff or otherwise provide him with a reasonable accommodation for his disability; in failing to investigate plaintiffs complaints; in failing to refer him back to the Medical Bureau for re-evaluation; in constructively discharging him; in placing him on the "Ineligible List"; and in failing to render a decision on his appeal of his placement on the "Ineligible List."

51. Each of the individual defendants, Klein and Becker, were officials who had final policymaking authority and ordered the discriminatory and retaliatory action of placing plaintiff on the Ineligible List, such that their decisions constitute the DOE's final decisions; personally participated in the discriminatory and retaliatory conduct; and/or occupied supervisory positions with the power over plaintiff to do more than carry out personnel decisions made by others.

52. As a result of the above discrimination and retaliation, plaintiff suffered, and continues to suffer, a loss of the salary and the benefits that would have been afforded him, severe and irreparable damage to his professional reputation, and extreme humiliation and emotional distress.

**FIRST CLAIM FOR RELIEF PURSUANT TO ADA
AGAINST THE DOE**

53. Plaintiff repeats and re-alleges the allegations in paragraphs 1- 52 as if fully set forth herein.

54. By reason of the foregoing, defendants failed to engage in an interactive dialogue concerning plaintiff's request for an accommodation; failed to afford plaintiff a reasonable

accommodation for his disability; subjected plaintiff to a hostile environment; in failing to refer him back to the Medical Bureau for re-evaluation; constructively discharged plaintiff; and discriminated and retaliated against plaintiff on account of his disability and protected activity by placing plaintiff on the "Ineligible List," all in violation of the ADA.

55. As a result of defendants' willful, knowing and intentional discrimination and retaliation, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

### SECOND CLAIM FOR RELIEF PURSUANT TO EXECUTIVE LAW § 296 AGAINST ALL DEFENDANTS

56. Plaintiff repeats and re-alleges the allegations in paragraphs 1-55 as if fully set forth herein.

57. By reason of the foregoing, defendants failed to engage in an interactive dialogue concerning plaintiff's request for an accommodation; failed to afford plaintiff a reasonable accommodation for his disability; subjected plaintiff to a hostile environment; in failing to refer him back to the Medical Bureau for re-evaluation; constructively discharged plaintiff; and discriminated and retaliated against plaintiff on account of his disability and protected activity by placing plaintiff on the "Ineligible List," all in violation of the New York State Executive Law § 296.

58. As a result of defendants' willful, knowing and intentional discrimination and retaliation, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

**THIRD CLAIM  FOR RELIEF PURSUANT TO HRL §8-502
AGAINST ALL DEFENDANTS**

59.     Plaintiff repeats and re-alleges the allegations in paragraphs 1- 58 as if fully set forth herein.

60.     By reason of the foregoing, defendants; failed to engage in an interactive dialogue concerning plaintiff's request for an accommodation;  failed to afford plaintiff a reasonable accommodation for his disability; subjected plaintiff to a hostile environment; in failing to refer him back to the Medical Bureau for re-evaluation; constructively discharged plaintiff; and discriminated and retaliated against plaintiff on account of his disability and protected activity by placing plaintiff on the "Ineligible List," all in violation of the New York City Human Rights Law, Administrative Code § 8-502 et seq.

61.     As a result of defendants' willful, knowing and intentional discrimination and retaliation, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

**FOURTH CLAIM  FOR RELIEF PURSUANT TO REHABILITATION ACT
AGAINST THE DOE**

62.     Plaintiff repeats and re-alleges the allegations in paragraphs 1- 61 as if fully set forth herein.

63.     Plaintiff, at all times relevant,  was a qualified handicapped person within the meaning of § 501 and/or 504 of the Rehabilitation Act.

64.     By reason of the foregoing, defendants failed to engage in an interactive dialogue concerning plaintiff's request for an accommodation; failed to afford plaintiff a reasonable accommodation for his disability; subjected plaintiff to a hostile environment; constructively

discharged plaintiff; and discriminated and retaliated against plaintiff on account of his disability and protected activity by placing plaintiff on the "Ineligible List," all in violation of the Rehabilitation Act.

65. As a result of defendants' willful, knowing and intentional discrimination and retaliation, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

### FIFTH CLAIM FOR RELIEF PURSUANT 1983 AGAINST ALL DEFENDANTS

66. Plaintiff repeats and re-alleges the allegations in paragraphs 1- 65 as if fully set forth herein.

67. Defendants acted with arbitrary and irrational and discriminatory intent in violation of due process and equal protection clauses of Fourteenth Amendment.

68. Defendants deprived plaintiff of his constitutionally protected liberty and/or property interest without affording plaintiff a pre-deprivation hearing and irreparably damaged plaintiff's professional reputation by placing plaintiff on the "Ineligible List" and effectively blacklisting plaintiff from pursuing any employment opportunities in his chosen profession.

69. Defendants denied plaintiff of equal protection of the laws in treating plaintiff differently than other similarly situated employees, and that selective treatment was based on impermissible considerations of his disability.

70. Individual defendants acted under pretense and color of law and in their individual and official capacities and within the scope of their employment.

71. Individual defendants acted beyond the scope of their jurisdiction, without any

authority of law and abused their powers.

72. Defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by § 1983.

73. As a result of defendants' misconduct, plaintiff sustained substantial losses in earnings, future pecuniary losses, losses to his professional reputation, and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

### SIXTH CLAIM FOR RELIEF FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

74. Plaintiff repeats and re-alleges the allegations in paragraphs 1-73 as if fully set forth herein.

75. Defendants' conduct, as described above, was extreme, outrageous and was beyond the bounds of human decency and was solely motivated by an intention to harm plaintiff.

76. Defendants' conduct as described above, was wanton and reckless, manifesting a conscious disregard for the rights of plaintiff.

77. As a result thereof, plaintiff has suffered, and continues to suffer, extreme humiliation, embarrassment, and mental and physical distress and anguish.

**WHEREFORE,** plaintiff respectfully requests that this Court enter judgement in plaintiff's favor and against defendants:

A. On the first claim for relief, for lost earnings, compensatory damages and emotional distress damages in the amount of $1,000,000 or in amounts to be determined by the trier of fact, plus attorneys fees, costs and interest.

B. On the second claim for relief, for lost earnings, compensatory damages and

>   emotional distress damages in the amount of $1,000,000 or in amounts to be determined by the trier of fact, plus costs and interest.
>
> C. On the third claim for relief, for lost earnings, compensatory damages and emotional distress damages in the amount of $1,000,000 or in amounts to be determined by the trier of fact, plus punitive damages, attorneys fees, costs and interest.
>
> D. On the fourth claim for relief, for lost earnings, compensatory damages and emotional distress damages in the amount of $1,000,000or in amounts to be determined by the trier of fact, plus attorneys fees, costs and interest.
>
> E. On the fifth claim for relief, for lost earnings, compensatory damages and emotional distress damages in the amount of $1,000,000 or in amounts to be determined by the trier of fact, plus attorneys fees, costs and interest.
>
> F. On the sixth claim for relief, for emotional distress damages in the amount of $1,000,000 or in amounts to be determined by the trier of fact,
>
> G. On all claim for reliefs, for such further and different relief as this Court may deem just and proper in the circumstances, including, but not limited to, injunctive and prospective relief of reinstatement and removal from the DOE's "Ineligible List."

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL CLAIMS FOR RELIEF**

Dated: New York, New York
       August 18, 2008

                                                CONOVER LAW OFFICES
                                                Attorneys for Plaintiff Peter Burkhart

                                                Bradford D. Conover
                                                A Member of the Firm
                                                75 Rockefeller Plaza (20th Floor)
                                                New York, New York 10019
                                                (212) 588-9080

**EXHIBIT A**



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5053 4899

950 Pennsylvania Avenue, N.W.
Karen Ferguson, EMP, PHB, Room 4239
Washington, DC 20530

Mr. Peter Burkhart
c/o Bradford D. Conover, Esquire
Attorney at Law
75 Rockefeller Plaza, 20th Fl.
New York, NY 10019

June 3, 2008

Re: EEOC Charge Against New York City Dept. of Education
No. 520200603745

Dear Mr. Burkhart:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:
    Title I of the Americans with Disabilities Act of 1990,
    42 U.S.C. 12111, et seq., and,
    Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Grace Chung Becker
Acting Assistant Attorney General
Civil Rights Division

by
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
    New York City Dept. of Education